BRUNOT. Justice.
 

 On application of relatrix to this court a writ of certiorari, coupled with a stay order, was granted. In response to the writ the record has been sent up, the respondent judge and H. L. Skannal have filed returns thereto, and the proceedings in the lower court have been submitted for review.
 

 The record discloses that H. L. Skannal was the holder and owner of a note for $7,000, executed by the relatrix in December, 1929, and secured by a mortgage on the property in Bossier parish which is involved in this suit. On January 16, 1934, Skannal attempted to foreclose the mortgage. He alleged in his foreclosure proceedings that the relatrix was a nonresident, and he had a curator ad hoc appointed to represent her. Pending the date of sale of the property, the relatrix signed a statement made before a notary public, and in the presence of two attesting witnesses, in which she declared that she was a resident of Bossier parish, La. In this statement she waived all formalities and consented that the property be readvertised and sold. This statement was attached to a supplemental petition that was filed in the foreclosure proceedings, and a new seizure and advertisement of the property for sale on April 21, 1934, followed. On the day before the sale, the brothers of the relatrix, upon alleging that the relatrix and the seizing creditor had conspired to defeat their claims to the property, obtained a temporary restraining order and a rule to show cause why a preliminary injunction should not issue. After a hearing thereon, the temporary restraining order was dissolv-. ed with damages, and the property was readvertised for sale on June 9, 1934. Prior to that date the relatrix filed a rule upon H. L. Skannal to show cause why the executory process should not be set aside and the sale of the property arrested.
 

 After a hearing thereon, the rule was dissolved and the demands of the relatrix were rejected. The relatrix then applied to this court for writs of certiorari, mandamus, and prohibition. This application was refused, and the property was sold and adjudicated to H. L. Skannal for $3,000, a sum, which it appears, represents its present value. After acquiring title, Skannal permitted the brothers of the relatrix, who were her tenants and in possession, to remain on the property until December, 1934, when, after unsuccessful demands for possession, he proceeded under the provisions of Act No. 113 of 1906 to eject them from the property. This proceeding was met by an injunction suit instituted by one of the relatrix’ brothers, who claimed the property as owner in possession. The trial of said suit resulted in a judgment dissolving, with damages, the preliminary injunction which issued therein. Skannal’s final steps to obtain possession of the property
 
 *327
 
 were stayed by the present suit, instituted by the relatrix, in which she prays for a restraining order, a rule to show cause why a preliminary injunction should not issue, for the issuance of a preliminary injunction, and, after a trial on the merits, for an injunction restraining and prohibiting the sheriff from executing the writ of ejectment sued out by Skannal, or from executing any other process that may issue in that proceeding. She also prays for judgment against Skannal and the sheriff, decreeing the adjudication and sale of the property to Skannal null and void, and ordering the inscription thereof in Conveyance Book 172, page 586 et seq., canceled and erased from the public records.
 

 The court issued a restraining order and the rule to show cause, as prayed for. Skannal filed a motion to dissolve the restraining order, basing his motion upon three grounds, viz.: Exceptions of no right and no cause of action; false and untrue allegations of facts alleged in the petition; and a plea of estoppel.
 

 The motion to dissolve the restraining order was submitted on the face of the papers; it being agreed that, in the event of its dissolution, a fixed sum should be awarded as damages. The plea of estoppel was heard and overruled, answer was filed, and the case was assigned for trial on the merits. The trial was had and the learned trial judge, in a carefully prepared written opinion, reviews, at length, the history of this litigation, and says:
 

 “The main contention of plaintiff, is that the sheriff never made any seizure of the property. Defendant contends that no seizure was necessary because of the waivers of Mrs. Hudson, but that nevertheless the sheriff did go upon and seize the property. The return of the sheriff on the writ of seizure and sale, offered in evidence as P. 3, recites:
 

 “ ‘Received the within writ of seizure and sale on the 9th day of March, 1934, and proceeded to execute the same by going upon, seizing and taking into my possession the following described property, to wit(Here follows a description of the property.)
 

 “L. B. Ryan, the deputy who executed the'writ was placed on the stand by plaintiff. He says that on the 9th day of March he went upon the property and walked around the house and knocked at the house and found no one on the property that day. He gave no notice of seizure to Mrs. Hudson because of the waiver annexed to the amended petition. Plaintiff’s contention is that the sheriff should have appointed a keeper and placed him in charge. As I appreciate the provisions of the Code of Practice, Articles 657 et seq. the sheriff is not required to appoint a keeper of real estate, but may do so. The possession he acquires by the seizure does not require him to eject the occupant of the premises, but the possession which he acquires is nevertheless the legal possession which upon sale of the property, he may transfer with the title. It appears
 
 *329
 
 to me that the sheriff did all that he ought to do in the matter of seizure. But Mrs. Hudson now denies signing the waiver which defendant seeks to use as an estoppel against her. This makes it necessary to pass on the verity of her signature to the waiver. She testified that she did not sign it, and placed her son and brothers on the stand to corroborate her, and they all say it is not her signature. Opposed to this testimony is that of Jas. G. Cowles, the Notary Public before whom it purports to have been signed, and the two witnesses who signed it as such, M. F. Johnson and J. W. Elston, all of whom say she signed the waiver in their presence and saw her sign. Other admittedly genuine signatures of Mrs. Hudson were offered in evidence and have been compared with the signature to the waiver, and it is my opinion that she signed the waiver. Counsel for Mrs. Hudson says that it is immaterial whether she signed the waiver, because it did not waive seizure. It cannot be denied that seizure is necessary unless waived, and it is doubtful if the instrument she signed can be held to be a waiver of seizure; however, as said above, I am of the opinion that the seizure by the sheriff is good.
 

 “In my opinion, the cases cited by plaintiff on the question of want of seizure are not applicable to the, facts in this case. The Supreme Court has laid down wha,t I conceive to be the proper solution of the question in the case of Major v. Hughes, 135 La. 354, 65 So. 487, where it is said:
 

 “ Tn the parish of Orleans the sheriff may seize immovable property by recording the seizure in the mortgage office, but in the other parishes of the State, (Jefferson perhaps excepted), he can make no legal seizure of any property save in connection with garnishment, without taking actual possession of the same. Citing cases.
 

 “ ‘It is true that, in taking possession of immovable property, he is not required, for the time being, .to proceed further in the execution of his writ, and actually eject the occupant of the premises, but the possession which he acquires is nevertheless the legal possession which upon the sale of the property, he may transfer with the title.’
 

 “In the above cited case it was admitted that there was. no seizure other than such seizure as resulted from the notice of seizure; so that the facts of that case are not the same as the facts in the case at bar, where, in my opinion, a seizure was made.
 

 “On the trial of the motion to dissolve the temporary restraining order issued in this case it was admitted that in the event it should be decided that the writ was improvidently issued, $100.00 would be the proper amount to award as damages.
 

 “For the reasons assigned there will be judgment in favor of the defendant, dissolving .the temporary restraining order issued in this case with damages in the-
 
 *331
 
 sum of $100.00, and rejecting the demands of the plaintiff, all at her cost.”
 

 The formal judgment conforming to the conclusions of the judge was prepared and signed, and the plaintiff (the relatrix here) moved for both a suspensive and devolutive appeal from the judgment. The court granted a devolutive appeal, and fixed the bond therefor, but refused to grant a suspensive appeal, and relatrix applied to this court for writs of certiorari and prohibition, with the result stated, supra.
 

 The record discloses that all proceedings had in the lower court were regular and within the court’s jurisdiction. The writ of prohibition only issues to inferior judges who exceed the bounds of their jurisdiction. Code Prac. art. 845.
 

 From the record and the recitals of relatrix in her application for writs, it is clear to us that her cause for complaint, if she has a complaint, is attributable to the refusal of the judge to grant her a suspensive appeal from his judgment dissolving the restraining order she secured at the inception of this suit and rejecting her demands in all respects. In other words, she has mistaken the only remedy which was available to her, if she had a just grievance; that is, a writ of mandamus to compel the judge to grant her a suspensive appeal from the judgment. In her application to this court for writs she prays only for writs of certiorari and prohibition. No mention whatever is made in her prayer for a writ of mandamus. Hence it follows that the certiorari issued herein must be recalled and vacated, and relatrix’ application dismissed, with costs, and it is so ordered.
 

 O'NEILL, C. J., takes no part.